Our first case this morning is Jeffords v. BP Corporation North America. Mr. Range? Good morning. Jeffords v. BP Corporation North America May it please the court, opposing counsel. Your Honor, the primary focus of our appeal is the lack of focus of the trial court upon the contractual documents, which created duty on behalf of the defendants toward Donald Jeffords, who took a fall from 7 feet 1 inches off a walking, working surface on the BP site. The trial court ignored the direct contractual provisions in the various contracts, which obligate and create a non-delegable duty toward BP, MCI, and FLUR toward Mr. Jeffords. These contractual obligations have been cited by the appellant in its brief and obligate specifically FLUR and MCI for the safety of all personnel on the work site. And specifically, this case involves OSHA violations and OSHA regulations, which distinguish it from two of the cases that were cited by the trial court, Ryan v. TCI Architects and Hunt Construction Group v. Garrett. Those did not involve OSHA violations, and there were specific contractual provisions related to both FLUR and MCI, which obligated them to make sure that they and the subcontractors and other contractors on site complied with state and federal regulations, which of course include OSHA regulations. Some of those provisions specifically are in sections 2101 and 2701 on pages 98, 99, and 104 of appellant's appendix, which is the contract between BP and FLUR, where the language makes the obligation upon FLUR to make sure all subcontractors and vendors comply with federal laws and regulations. So what do you make of the language in that contract that all duties and responsibilities undertaken pursuant to this contract will be for the sole and exclusive benefit of company, that is BP, and contractor, FLUR, and not for the benefit of any other party? Well, there's other contractual provisions that differ with that language. So if they're in conflict with each other What conflicts with it? Well, when you have contractual provisions that obligate FLUR to make sure all subcontractors and vendors comply with all state and federal laws and regulations, that is a non-delegable duty. No, that doesn't necessarily run for the benefit of anyone other than BP. When you have a contractual obligation and FLUR assumes a duty to make sure that all subcontractors and vendors toward everyone on site. But the only place a duty is specifically addressed is it's for the sole and exclusive benefit of BP. But that conflicts with the obligation under the contract for FLUR to make sure that OSHA regulations are complied with all vendors and subcontractors. You can't get away from a duty toward subcontractors and vendors by simply saying, well, that's only helping us. BP made it clear that FLUR, in their brief, BP made it clear that FLUR was hired to be a safety group on the site making sure that these types of regulations were complied with. And they also made sure that FLUR would comply with their integrity project management plan as provided in section 12.08 of the contract between BP and FLUR. And, I mean, there's a couple of different provisions that make it clear that FLUR is supposed to follow all federal regulations, conduct work in accordance with health, safety, security, environmental procedures that were set up by BP, make sure that they were supposed to implement those plans. And also provide construction management services of a third-party contractor. You can't contract away a duty to comply with OSHA regulations. They apply to Mr. Jeffords. There were various parties that obviously would have to make sure that those regulations were complied with on site, but BP, MCI, and FLUR were three of the parties who had to make sure that OSHA regulations were complied with. Mr. Range, what OSHA provisions are you relying on to cover this case? Well, I'm certainly not an OSHA expert, Your Honor. And we cited an expert, Michael Wright. We cited his report. And he goes into great detail of the OSHA regulations that the parties are required to comply with. I could not sit here and cite every single regulation that Mr. Wright cited. But there are specific regulations related to fall from heights, which include the General Duty Clause, which include various specific regulations for requiring there to be personal fall arrest systems, harness systems, things of that nature that should have been in place to prevent a fall from 7 feet 1 inches. The post-fall investigation made it very clear that there was never any type of hazard assessment or risk assessment that was performed by anyone related to that particular task that Mr. Jeffords was performing at the time of his fall. So there are very specific OSHA regulations relating to falls from height, Your Honor. And those are cited directly in Mr. Wright's expert report. And also he goes into great detail on how they apply to three appellees, BP, MCI, and Fleur. And certainly they also apply to Mr. Jeffords' employer, who would be one of the parties, if this case were going to trial, who fault could be assessed to. But for purposes of this appeal, Mr. Wright cited in great detail, as I said, OSHA regulations and how they apply to BP, MCI, and Fleur. And going further, I mean, BP retained overall control of this site. And in the contract between Fleur and MCI, there is provisions making sure that MCI understands that Fleur is directly acting as BP's agent. So if Fleur breaches a duty as BP's agent, that breach flows back to BP also. So let me ask you about that. You said in your reply brief, page 11, by acting as Fleur's principal, BP's liability extends to any negligent acts committed by Fleur. Essentially what you just said. Doesn't that directly contradict the general presumption in Indiana that an independent contractor is an independent contractor? That the person who hires that contractor does not take on liability for their negligence? Well, but you do, again, going back to the contracts, Your Honor. Let's ask, I'm talking about the more, you're arguing more general principal-agent terms. And the contract that I see says sole benefit of BP. And you seem to be trying to get around the general background role of independent contractors. Well, understand that in the contract between BP and Central, even though it states that Central is an independent contractor, the provisions also make it very clear under Section 4.01 that BP shall supervise Central. So you have conflicting contractual provisions. And we are relying upon the contractual provisions to, for our best argument, related to how duty applies in this particular case on these particular facts. And you have to look at these contracts. You have four different contracts, Your Honor. You have a contract between BP and Fleur. You have a contract between BP and Central. You have a contract between BP and MCI. And then you have a contract between Fleur and MCI. And that is different, for example, than the Hunt Construction v. Garrett case, where all you had was a contract between the construction manager and the owner. So, in other words, it's like having one of the four contracts. And so these four different contracts have very specific provisions that apply to how you apply the duty, the non-delegable duty of MCI, Fleur specifically. There's very specific language on how they are required to comply with federal regulations and make sure all the vendors and subcontractors comply with federal regulations. That's very clear in the contracts. But you have to read these conflicting provisions. And I agree with you that the provisions conflict. However, if the provisions conflict— I didn't say that the provisions conflict. Maybe I was interpreting that you thought the provisions conflicted. If I misinterpreted that, I apologize. I certainly would agree that the language in the contracts do conflict, but I think from the conflicted language, you look at the language that obviously is most favorable to the appellant. And when you have a direct contract between BP and Central that requires BP to supervise lift activities, and then you also have the fact that outside of the contract, BP has separate lift procedures that require anyone to obtain a permit that various witnesses testified to that are outside of the contract, and then you specifically have provisions that require BP and you require Central to be supervised by BP. And then you have BP also making sure that on this entire project, they have an integrated project management team, and you have various provisions specifically related to that integrated project management team, and the top person on that team is a BP person, Pete Bauer. From the testimony of witnesses, he's the top person leading the overall site safety, making sure these contracts make sure that they are required to comply with these policies and procedures that BP already had in place, which again require risk assessment, task risk assessment. And if you go to the very specific language, these activities and the specific activity that Mr. Jeffords was performing at the time, there should have been some type of risk assessment performed by these parties, and it was very clear in the post-fall investigation, which made it very clear that none of the parties complied with any type of task or risk assessment. And you have contractual provisions that obligate FLOR, obligate MCI, and then again we're relying upon the contractual provision with BP and Central that requires BP to supervise Central in their lift activities and other activities associated with lifts to, you know, which puts into words the non-delegable duty that applies to BP. And then you have a direct contract between BP and MCI that makes it clear and talks about the fact that they will be responsible and liable for the equipment, contractors' materials, facilities, and the safety of personnel, BP personnel, and third parties who may be impacted by contractors' provisions of goods and or services. And then you have testimony from the witnesses who make it very clear that MCI, in addition to FLOR, was in charge of the particular site that we're talking about on the lakefront area in the outside battery limits, which is... I'll say just a minute about MCI. What do you, what, from your perspective, is the role of MCI in this whole operation? Okay. And, you know, let's take that first. What role were they playing in this? Well, MCI was a contractor on site. They had a direct contract with BP that obligated them on Appendix 161 in Appendix 3 of their contract to obligated them for the safety of personnel, BP personnel, and third parties who may be impacted by their provisions of goods and services. But then they also have a direct contract with FLOR acting as BP's agent, and there are specific contractual provisions that require them, again, to make sure under Section 2701, Appendix 186, contractors shall comply with and require and ensure that all its subcontractors, vendors, and material men comply with all valid municipal ordinance, states, and federal laws and applicable orders regulations, which of course include OSHA regulations. And then further in that section of the contract in 2704, contractor shall include all entities and persons of the contractor group, which is defined earlier in the contract between FLOR and MCI to basically include everyone. If you go back and read the definition of contractor group on Appendix 174, contractor group shall mean the following entities and persons individually and collectively, contractor and its affiliates, its subcontractors and vendors and their affiliates, and the officers, directors, employees, agents, and representatives of all of those entities. Excuse me. Contractor group shall not include any person who is a member of the company group or owner group. So that basically includes everyone on the site. I think that even includes somebody who doesn't have any other particular contract with MCI, just has a contract with BP, isn't it? That's correct. Absolutely. That's your view? Yes, that is my view. Are you relying then strictly on contract interpretation to hold MCI, or are you also relying on purported extra contractual actions by MCI that might have bought by? I think the evidence is clear that the extra contractual conduct only applies to BP and FLOR. I don't have extra contractual conduct evidence related specifically to MCI. To tie MCI, you've got to do it through this melange of contract. I think that's fair, yes. Thank you, Counselor. I'd like to reserve the rest of my time for rebuttal. Could you address the question of proximate cause raised by FLOR? You didn't address it in your reply brief that I saw. Well, proximate clause wasn't addressed by the trial court. No, but it was briefed to the trial court, correct? It's an alternative ground for affirmance that's being argued by your opposing party. Well, and obviously how we address proximate cause specifically is I retained an expert, Michael Wright, to address proximate cause who reviewed all of the materials, including Mr. Jeffords' interrogatory answers, including all of the post-fall investigation, and clearly reached conclusions that would satisfy proximate cause, would satisfy duty and breach, specifically responsible cause, proximate cause. So I'm relying upon Mr. Wright to reach those conclusions related to proximate cause. Thank you. Thank you. I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Wright. Mr. Nafziger. May it please the Court, I'm Jeff Nafziger on behalf of BP and MCI. I think what the plaintiff alleged in his complaint and what BP admitted out of the gate in this case in its answer is that BP was the refinery owner, and that's the relationship that's key to the court's analysis of any duty of care. In moving for summary judgment on behalf of BP, we made clear that they could not owe a duty of care under the Peelick and the Daisy cases because BP did not actually exercise any control directly over the crane that Mr. Jeffords was on when he allegedly fell. That's what governs this case is that BP was a premises owner. Plaintiff in briefing in the district court, as the district court's opinion noted, did not brief that issue, did not oppose BP on that issue, and waived the issue for purposes in the district court as well as on appeal, and that doesn't change here. I think because plaintiff appellant knows that he has no basis to hold BP liable under any kind of duty of care or tort theory, he switched to this theory that he could argue that BP is a construction manager or a general contractor, and even at some points in his briefs he actually says BP was a construction manager. That's laughable, and the contracts make that clear as well as the depositions. BP entered into a contract with Floor as a construction manager to actually manage the construction. It did seem odd to me that BP was the entity that hired Central Crane. It seemed to me that one of the other entities that would be directly working on the structure would have hired the crane operator. If BP wants to take the position that it was simply the landowner and was having some work done on its property, it seems strange that it would hire the crane. To me that's the soft underbelly of the case for you, and maybe you could address that. No, I'd love to, Your Honor. So when there's a construction management agreement, often the owner will directly contract with the subcontractors such as MCI or Central to actually perform work, but then they entrust the management and coordination to a construction manager like Floor, and then entrust to Central and MCI and the other subcontractors some obligation for safety over their employees and their own subcontractors, and that's exactly what BP did here. That's simply the way it's done, you're saying. I'm sorry? That's the custom and practice in the industry. It often is, and I think even if that weren't the case, I think that the Hunt case from the Indiana Supreme Court makes clear that even if you could characterize BP as a construction manager, it can only owe a duty of care if it actually directly agreed in a contract that BP was going to be responsible for the safety of workers. Is there some place in the record where this custom and practice of the industry or BP's decision to hire the crane operator itself would be explained to us? I mean, is there any background information in the record that would be helpful to us? I'm not aware of any. I can say that in the Supreme Court's discussion in the Hunt case, it does give a little bit of background on that decision about what a construction manager is, which I think would be helpful to the court if you want to read that portion of the opinion, but I'm not— The biggest problem we have as generalist judges sitting in a three-state area is to understand custom and practice of an industry, and particularly on summary judgment, you don't always get a good deal of information on that. No, I understand the conundrum you're in. That makes sense. I think looking at the record, it's clear that Central, in its contract, agreed that it would be responsible for the safety of its employees, which includes the plaintiff, Mr. Jeffords. They also agreed to be responsible for the means and methods of the work, which means that Central had the obligation to make sure that however Mr. Jeffords was going to inspect his crane or do his work, it had to be safe. BP did not undertake any such responsibility, nor did BP undertake gratuitously, in terms of its practices at the site, any responsibility over safety. There's no evidence that there were any BP personnel that were out and about telling Central how to do its crane operations or actually telling the workers how to do their means and methods. For plaintiff to actually meet her obligation to show an assumption of duty, they have to point to some evidence like that. I'm sorry. If someone, an officer of BP or executive of some sort, were to walk past the site and see something that just obviously was untoward, with respect to the operation of this crane, what would have been, under the contractual arrangements, the way to address that problem? If a BP employee saw something... Two employees of a crane horsing around on this structure, this is dangerous. Somebody's going to get hurt out there. As a matter of contract law, BP would have zero obligation to do anything because they delegate it. BP does have a policy at the refinery that says anybody can stop work if they see something that's unsafe. They want to empower workers on the scene to say something if they see something unsafe. So there would be that. BP management that sees something unsafe, decides it wants to do something about it, and it may well. It doesn't want somebody dying on its property or something. What does the manager do? Who does he talk to? BP would go through the chain of command, and they would approach FLOR to inform Central as a subcontractor that they need to change their work practices. But Central is not a subcontractor. Central is a subcontractor directly with BP. That's correct. It is. The point being, though, that BP did not go beyond the contracts in any way. They've cited no evidence that BP went beyond the contracts in anything it did at the site. And from your perspective, how does MCI get into this mix, if it does at all? So at many points in the appellant's brief, if they claim that MCI was a general contractor, I don't think there's any basis in the Record on Appeal whatsoever or in the contracts to make such a claim. It's clear from the contract language between BP and MCI that they're actually going to perform construction work at the project, and there's no contract that anyone's produced in this case between MCI and Central Renecraine. In the deposition of Mark Richardson, who was a supervisor at Central Renecraine, at Appendix Pages 200 through 202, he explains that MCI was another subcontractor and that Central Renecraine was doing crane lifts for all of the subcontractors in that area of the refinery, including MCI. I heard Plaintiff's Counsel claim that somehow MCI was contractually responsible in a general contractor. I don't know where that comes from. If you look at the MCI contract, it specifically says that MCI is responsible for its employees and its subcontractor's safety. Since Central is not a subcontractor of MCI, MCI could not assume a duty of care under the Hunt case. Maybe you can enlighten us a little further on why did BP go get a crane? It seems to be somebody else should have gotten this crane if BP was just the good Patroon landowner here and wasn't really getting involved in the messy stuff of this contracting, of this construction. I don't know specifically why BP made the decision to enter into those subcontractor tracks. It's not in the record on appeal. I'd say that if we go back to the Hunt decision, the binding precedent in this case, that's not part of the Hunt court's analysis. It's only whether a party, a defendant, actually took on a role for safety at a project, and BP did the opposite. It said to its subcontractors, both Central, mainly Central, and said you're responsible for your employees' safety. Under the Hunt decision, that means BP has no duty of care. Even if BP instituted, as it did, a safety program it wanted the subcontractors to use. In the Hunt decision, the court also said that's not enough to impose a duty of care unless the defendant goes outside the scope of the contracts, which there's no evidence BP did here. I would say I think we addressed it adequately in the briefs, but I think it's clear when counsel argued the Perryman case applies, I think it's clear that it does not apply to MCI here. In the Perryman case, the defendant was a construction manager that was agreeing to ensure its subcontractors were complying with federal law. In this case, Central wasn't a subcontractor of MCI, so Perryman has absolutely no application to this case. Do you see MCI dealing with the concrete, the equivalent of a food service at the site? A food service? No, I'm trying to get a following up on Judge Ripple's inquiry about what MCI, how we should view MCI. They supplied the concrete. They're a civil contractor, so they'll actually do the concrete pours and that kind of work is what they were doing at the project. And that's the sole focus, the way we should look at MCI? I believe so, and I think the contracts bear out that they were only responsible for construction work. There's nothing in MCI's contract that says it's a construction manager. If you look at Floor's contract, it's a much larger one, and it says it's a construction management agreement, whereas the contract with MCI does not say that. I would like to address very briefly something that counsel said in oral argument. It seems to me that counsel for appellant is now arguing that BP owed a duty of care under a tort theory based on OSHA regulations. I never saw that developed in appellant's brief. We addressed the fact in a footnote on the last page of BP and MCI's brief that they haven't cited any authority from anywhere in the entire country that would suggest you can use OSHA's multi-employer citation policy to impose a tort duty of care. That argument's waived, and I'm not aware of any such case. There isn't one. Whether or not OSHA wants to enforce its regulations at a construction site is completely separate from whether Indiana's substantive law would create a tort duty of care. I'll just address that as quickly as that. If I could just ask you, Mr. Nafziger, is it pretty common, if not universal, in the construction industry that upstream parties contract with downstream parties and ask for commitments to obey the law? Yes, correct. Without necessarily creating enforceable duties in favor of third parties or the rest of the world. That's correct, and I think I do take exception to the concept that BP wasn't allowed to walk on the site. If I hire a contractor at my house, I have the right to walk around and make sure they're doing what I ask them to do. So the fact that BP had personnel walking on the site... Not taking responsibility for their potential negligence. Yeah, exactly. Since I don't have much time left, on the proximate cause issue, I know that in appellant's reply, they argued we'd waive the issue because we didn't appeal it. Obviously, that's not the case. The court can consider any grounds that would justify affirmance in this case. On proximate cause, the plaintiff appellant has never supplied any evidence as to how or why Mr. Jeffords fell from this crane. The only evidence they've supplied is that he lost his balance, and we don't know why. Unfortunately for the plaintiff, Indiana law is clear that if you don't have evidence as to how or why an accident occurs, the mere fact that an accident occurs is not enough to show proximate cause. Because Mr. Jeffords passed away, unfortunately, before his deposition was able to go, and because the interrogatory answers are inadmissible and can't be considered, and don't even describe... how or why he fell, they can't show proximate cause. That's another basis that justifies affirmance. I'd say that in terms of the breach of duty arguments counsel's making, the federal regulations are clear at 1926.500A1 that a pre-work inspection is not even governed by OSHA regulations. And Mark Richardson, from Central Rent-A-Crane, the boss of the plaintiff, testified in his deposition that they were doing a pre-work inspection at the time Mr. Jeffords fell. So OSHA regulations don't even apply. That's in the appendix at page 238. I really appreciate your consideration. Unless you have other questions, I appreciate your time. Thank you. Mr. Hawke. Yes, sir. Good morning, Your Honors. Robert Hawke, Jr. on behalf of Appali Fleur. As Your Honor had referenced earlier, the general rule in Indiana is that an independent contract or a construction manager does not have responsibility for injuries that happen as the result of a workplace accident to employees of an independent contractor. And the basis for that or the rationale is that the construction manager has little or no control over the actions of the subcontractor. And there's two very limited exceptions to that general rule, and that's if the construction manager voluntarily assumes that obligation either by contract or by its conduct. And the case of Hunt lays out Indiana's general framework in terms of looking at that. And the place that you start is the construction management agreement. And in this instance, under 14-03-01, which is the primary provision titled construction management, it indicates that Fleur's responsibility is essentially coordination and monitoring of the work being performed on this project and making sure that it's proceeding in accordance with the contract documents and specifications. In particular, and very important to this case, it indicates that the contractor shall not be responsible for construction means, methods, techniques, or safety precautions of construction contractors. And this is directly square with the reasoning and rationale in Hunt. In Hunt, there is also a construction management contract. There is also other contracts with specific contractors. And in Hunt, the key determining factor that the court utilized in determining that construction manager did not have a responsibility for job site safety was the fact that it did not maintain control over the work activities on the job site. There was no intent to control, and that was different than the limited ruling in Ryan and some of the other preceding cases where the general contractor or the construction manager had, in the contractual language, indicated an intent to maintain control over the methods and details of the work. Mr. Hawk, let me ask you to address, if you would, the language. I think it's paragraphs 12.06 in your contract with BP. The contractor floor shall take all reasonable precautions, including those related to sanitation and health, for the safety of its personnel and the personnel of others to protect all work done and all materials furnished under the contract from loss or damage. What duties were you taking on there? The obligation there is intended for a floor to ensure that its work would not injure others or other contractors on the project. And I think another thing that we have... Its work involves supervision of everybody, though, right? That's true, but... You're the manager. That's true, but in order for the construction manager to be responsible for others' work, there has to be an intent to take on that responsibility, including safety precautions. So explain to me what you think 12.06 means, please. Well, my read of it is that that means that floors to ensure that any work that it's performing does not cause injury to others or others on the work project. That same provision is also contained in the BP MCI contract, that same exact provision. And I think under Ryan, one of the things that's stressed in Ryan is that... I'm sorry, the Hunt case is that the contract has to be read as a whole, and not only as a whole, but in connection with the other contracts on the job. Yeah, I understand that. But let's start from this piece and work out from there. Why isn't it reasonable to read that as saying the construction manager is taking on responsibility for health and safety of all personnel on the site and all work done on the site? Well, I think the answer is that I don't think that's the intention when you read in connection with... Please don't tell me about the intention. Tell me about the language and point to other language that you think somehow modifies it. Okay. Or maybe I'm just misreading it. Well, the language that I'm reading applies to loss or damages by the process of construction, by action of elements, or by other cause or causes. My read of this means that if FLIR in its own activities has a duty to make sure anything that it does on the job site as part of its monitoring does not injure others or damage work that's being done on the premises. I think other language that shows what the responsibilities of the parties are with respect to safety are contained in 14-0301 that indicates contractor shall not be responsible for construction means, methods, techniques, or safety precautions. Contractor does not guarantee the work under 14-0503 against defects in equipment or items furnished by company or others. And then the language that you mentioned under Article 43-4301 that there are no third-party beneficiaries and that this contract between BP and FLIR is only intended to benefit BP, not other contractors on the site. There is no contract between BP and Central Crane, whom Jeffords was an employee of. In that contract, the Central Crane contract, under 14-401, it says the contractor shall control the performance of the details of the work, shall be responsible for ensuring appropriate safety in the presence of company representatives, BP, or its representatives, which would include FLIR, shall not relieve the contractor from its obligations. Well, I mean, obviously there is language that is helpful to your position in that contract. But why is it unreasonable to say, look, we've got FLIR as construction manager in one paragraph saying we're not responsible for safety precautions and in the other we are? Is that too crude an interpretation? Well, I go back to the language and the direction of Hunt in saying that we have to read the contract as a whole and we also have to read it. Okay, I have those two provisions. What am I missing? 12.06 and 14.0301. Well, I think the other part of it is the contract between Central Crane and BP, and that's consistent with 14-03 in that it gives the obligation for safety for Central Crane employees directly to Central Crane. And I think if we look at that contract in connection with the BP FLIR contract, there's consistency there. And that this language, which is more or less boilerplate language that's contained in all of the BP contracts, means that when you're out on the site and you're performing your jobs, you have a responsibility not to injure others and not to damage the work of others. And that it's not inconsistent with the other language within the BP FLIR contract, and that contract's also consistent with the contract between BP and Central. And those are consistent in that the intent is not for FLIR to take control over the methods and means of Central Crane's work, but just to monitor the progress to make sure that it's generally within the specifications of the project. Thank you, Mr. Hoffs. Thank you. I heard two points from counsel that I would like to directly address. I believe it was Judge Ripple that had a question about inspection. In the contract between BP and Central, in section 11, 11.01 and 11.02, specifically, BP retains the authority, if you will, for inspections. Section 11.01 on Appendix 117, if contractor is providing labor with equipment to company, all work performed by contractor here under shall be subject to inspection, testing, and approval by company's representative. 11.02, contractor shall not proceed with work until it has been inspected and approved by company's representative. So, while obligating Central to comply with regulations and do the work, BP retains the authority to supervise, inspect, and approve all of the work. How is that different, Mr. Ragey, from a situation in which I hire a company to fix my roof and gutters up at dangerous heights, and they bring in some folks and maybe there's some negligence and there's some injury on their part? Am I responsible for that because I have the authority to look at the work that they're doing and approve of it? You're talking as a homeowner? Yes. I think the obligations of a homeowner are completely different from the obligations... Why? Well, you have expertise by BP. It's their site. They are retaining the authority to... I know my house better than anybody else's. But you're not going to be up on the roof supervising the work being done. I may climb up and take a look. How is that different from what BP is doing here? It's different because of the contractual obligations that BP retains, and also because of the construction industry law in the state of Indiana. The construction industry law in the state of Indiana, when you're talking specifically OSHA regulations, you are talking about employer duties that apply to BP, MCI, and FLUR. Those don't apply to a homeowner at all. They are not an employer of this roofer that you hire. Nor is BP an employer of Central Crane, right? They can be defined as an employer under the General Duty Clause of OSHA. Yes, they can. Why can't I be? Why am I not an employer if I contract with the roofing company? It's not a work site, specifically. It's not? Well, I mean... What's the difference? Well, again, construction industry law is different than a private homeowner law. I think that's what I would rely upon specifically. And, again, you have contractual obligations. If you have... You know, you have specific contractual obligations that BP retains by contract in each of these contracts that they have along with their agent, FLUR. And so when you have contractual obligations that have been interpreted in Indiana as being... as BP accepting responsibility as a supervisor and as a manager and they have to enforce OSHA regulations, I think that is the difference. I would also... Let me ask you about a provision in the contract between BP and Central. The contract tasks Central with providing their employees with appropriate functional safety equipment, including that for, quote, fall protection, including harnesses, lanyards, and retractable safety lines. Didn't Central assume all that safety responsibility? They are one of the parties that had safety responsibilities toward Mr. Jefferts. That's true. But that doesn't mean that the other parties don't have similar responsibilities under OSHA regulations and under Indiana construction law. I also want to correct something that counsel stated regarding the Hunt case. In the Hunt case, there was only one contract between Hunt Construction Group and the stadium authority to act as construction manager. There was not an OSHA violation alleged in the Hunt case. There is an OSHA violation alleged. Obviously, numerous OSHA violations alleged in this case specifically. And so you have a difference because there are different contractual obligations with the Hunt Construction Group versus Garrett case versus the case at Barr. So I want to correct something that the counsel said. The majority of these arguments directly relate to contractual provisions. Please keep in mind that these are OSHA violations specifically. So you're relying on a tort theory? That everybody's accountable under tort law for violations of the OSHA? Well, there's... I'm not sure exactly what you mean by that, Your Honor, because certainly... According to what Mr. Hawks, or what Mr. Nafziger said. Well, I think Mr. Nafziger is kind of mischaracterizing the arguments that we've made. There are obligations certainly under tort law, but under OSHA regulations that require BPMCI and FLOR to enforce OSHA regulations in the contracts based upon the contractual duty. The contract language is the basis for the duty toward Mr. Jeffords primarily. So I think he's trying to mischaracterize. We haven't been switching our arguments. He made that term. I think our arguments have been consistent from the trial court. Let me just ask you this. Is it your position that OSHA requires fall protection for work performed on construction vehicles regardless of height? Yes. Well, above certain heights, Your Honor. It's above four feet. There are certain regulations above four feet, certain regulations above six feet, but this is defined as a walking-working surface, and those regulations apply directly to this case and these facts. All right. Thank you. Thank you. All right, thanks to all counsel. The case is taken under advisement.